**UNITED STATES of America, Plaintiff,**

v.

**Carl L. RODGERS, Defendant.**

**No. 87 CR 549.**

United States District Court,
N.D. Illinois, E.D.

Oct. 21, 1987.

Anton R. Valukas, U.S. Atty., Stephen P. Sinnott, Asst. U.S. Atty., U.S. Dept. of Justice, Chicago, Ill., for plaintiff.

Ronald A. Bredemann, Flood, Bredemann & Evans, Park Ridge, Ill., for defendant.

**MEMORANDUM OPINION
AND ORDER**

ALESIA, District Judge.

The defendant has filed a motion to withdraw his plea of guilty. For the reasons

---

set forth below, the defendant's motion is denied.

## I. FACTS

On August 25, 1987, the defendant, Carl Rodgers, appeared before this Court and· entered a plea of guilty to a two-count information. Count I of the information charged the defendant with devising a scheme to defraud by using the mails to obtain more than $10,000 in merchandise on the credit card accounts of others without their knowledge or consent, in violation of 18 U.S.C. § 1341. Count II of the information charged the defendant with knowingly and intentionally using an unauthorized access device, namely, the American Express credit card of another, to obtain merchandise of $1,000 or more, in violation of 18 U.S.C. § 1029.

When the defendant appeared before the Court for arraignment on these charges, he was accompanied and represented by counsel, James A. McGurk, a member of the Federal Defender Panel. At that time, the defendant and McGurk advised the Court that the defendant wished to plead guilty and waive indictment. They also produced a plea agreement, which the defendant acknowledged and signed in open court.

Before accepting the plea agreement, the Court conducted a hearing to ensure that the defendant's plea was voluntary and had a basis in fact, as required by Rule 11 of the Federal Rules of Criminal Procedure. During the hearing, the Court questioned the defendant at length regarding his background, competence, representation by counsel, participation in the alleged crimes, and waiver of various constitutional rights. *See* Appendix for Transcript of Hearing. After satisfying itself that all of the requirements of Rule 11 had been fulfilled, the Court accepted the plea agreement.

On August 31, 1987, this Court received a letter from the defendant dated August 27, 1987 and entitled "Request for Change of Attorney." Several days later, this letter was followed by McGurk's motion to withdraw as counsel for the defendant.

On September 3, 1987, the Court granted McGurk's motion to withdraw and, pursuant to the defendant's request, simultaneously appointed new counsel to represent the defendant. The Court also directed new counsel to secure a copy of the transcript of the Rule 11 hearing and granted the defendant leave to file a motion to withdraw his plea.

On September 18, 1987, the defendant filed a verified motion to withdraw his plea of guilty. The Government filed a memorandum in opposition to the defendant's motion on September 23, 1987. The defendant filed a reply memorandum (labeled a response) on October 2, 1987. In addition, pursuant to this Court's order, on October 13, 1987, the Government filed a supplemental memorandum containing a verified response from McGurk.

## II. DISCUSSION

■ Rule 32(d) of the Federal Rules of Criminal Procedure governs plea withdrawal. According to that rule, a court *may* permit withdrawal of a guilty plea before sentencing "upon a showing by the defendant of any fair and just reason." Fed.R. Crim.P. 32(d) (emphasis supplied). In construing this rule, the courts in this circuit have consistently held that withdrawal of a plea before sentencing is not an absolute right, but is a matter within the broad discretion of the court. *See United States v. Ellison,* 798 F.2d 1102, 1104 (7th Cir. 1986); *United States v. Thompson,* 680 F.2d 1145, 1150 (7th Cir.1982). In addition, the defendant bears the burden of demonstrating valid grounds justifying withdrawal of his plea. *Ellison,* 798 F.2d at 1104.

■ In this case, the defendant has advanced three "reasons" for withdrawal: (1) that he had not read the final draft of the plea agreement before he pleaded guilty, though he advised the Court he had done so because he was nervous and received instructions from his attorney to say "yes" when asked if he understood the Court's questions; (2) that he did not understand that the Government would recommend an unspecified period of incarceration, but instead thought that he would receive no more than one year of imprisonment plus

some form of probation; and (3) that he believed that a sentence of probation would not result in his automatic deportation from the United States.

In his verified response, McGurk has controverted each of the allegations raised by the defendant as "reasons" for withdrawing his sentence. Supplying specific dates and locations, McGurk stated that he and the defendant reviewed both the initial and final drafts of the information and plea agreement line-by-line. McGurk also stated that he explicitly advised the defendant that the Government would recommend an unspecified period of incarceration at sentencing and did not advise the defendant that he would receive a specific period of incarceration. McGurk further advised the defendant that under the terms of the plea agreement, the Government was free to advise any state or federal agency, including the United States Immigration and Naturalization Service, of the defendant's convictions.

McGurk's version of the facts, as set forth in his verified petition, is corroborated by the defendant's own testimony, as well as this Court's observations of defendant's demeanor at the Rule 11 hearing. In contrast, defendant's version can only be characterized as curiously lacking in specifics, wholly unsubstantiated, and inconsistent. Consequently, based upon our observations of McGurk's demeanor in court, his ability to substantiate his allegations with dates, times, and documentation, and his extensive experience as a member of the criminal bar, we specifically find that where disputed, his allegations are worthy of belief and the defendant's are not.

For example, we do not believe that the defendant's answers to the Court's inquiries under Rule 11 were attributable to "nervousness." During the hearing, this Court had the unique opportunity to observe the defendant's demeanor while testifying and interacting with McGurk. At

that time, the defendant did not appear nervous, frightened, intimidated, or confused. On the contrary, the defendant appeared alert, calm, well-composed, and informed. He testified under oath that he is 28 years of age, enjoys good health, holds a master's degree, and has been employed in various capacities by several different entities, including a law firm. In view of the defendant's conduct, background, and experience, we do not believe that his responses were not made knowingly and intelligently.

Nor do we believe, as the defendant suggests, that he was blindly parroting affirmative answers to the Court's questions on advice of counsel. The defendant's own behavior—before, during, and after the Rule 11 hearing—dictates the opposite conclusion. According to McGurk's verified response, during plea negotiations, the defendant disputed one of the terms of the initial plea agreement which would have arguably required him to cooperate against his wife. After further negotiations, this item was resolved to the defendant's satisfaction and was amended accordingly in the final draft of the plea agreement.[1] In addition, during the hearing, when asked if the Government's version of defendant's participation in the alleged scheme was accurate, the defendant voluntarily supplemented and clarified certain details related to the perpetration of the scheme. Furthermore, after the hearing, the defendant sent this Court a letter, in which he essentially admitted his guilt, stating: "I have already pleaded guilty, because I am now a christian [sic] and must live by the truth."[2] In our opinion, these actions are not consistent with those of one who is blindly following his attorney's advice.

The defendant's claims that he did not read or understand the terms of the plea agreement also lack credibility. Specifically, the defendant maintains that he did not know that the Government would recom-

---

**1.** We find it curious that while the defendant actively sought to change this provision as it appeared in the initial draft, he did not seek to change those about which he now complains, although they also appeared in the initial draft.

**2.** This statement made by the defendant directly impeaches his statement in his brief that withdrawal of his plea was motivated by his belief that he is innocent.

mend an unspecified period of incarceration or that his sentence of probation could result in automatic deportation. As mentioned previously, these claims are directly refuted by McGurk in his verified response and by the defendant's own testimony at the Rule 11 hearing. In addition, the Court read aloud to defendant these provisions of the plea agreement and many others during the Rule 11 hearing. When asked if the defendant understood them, he answered affirmatively. Moreover, even if we accepted as true the defendant's claim that he erroneously believed he would receive a less severe punishment by pleading guilty, that belief would not be a sufficient basis for withdrawal of his plea. *See United States v. Marcus,* 213 F.2d 230, 232 (7th Cir.1954).

In sum, based upon our review of the facts in the record, we find that the defendant has failed to overcome his burden of demonstrating a "fair and just" reason for withdrawal of his plea.[3] Indeed, each of the "reasons" advanced by the defendant as justification for withdrawal of his plea is refuted by the record and lacks merit. The record abounds with evidence that the defendant entered his guilty plea with full knowledge of the facts, with ample warning of the consequences, and after deliberation over the details.

Accordingly, the defendant's motion to withdraw his plea of guilty is denied.

## APPENDIX TO MEMORANDUM OPINION AND ORDER

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE
JAMES H. ALESIA

THE CLERK: 87 CR 549. United States of America versus Carl L. Rodgers.

MR. SINNOTT: Good afternoon, your Honor. Stephen Sinnott on behalf of the United States.

MR. McGUIRK: Good afternoon, your Honor. James McGuirk on behalf of the

defendant, Charles Rodgers, who is present in court today.

THE COURT: It is my understanding that the defendant here is going to waive indictment and also enter a plea of guilty, is that correct?

MR. McGUIRK: That is correct, your Honor.

THE COURT: Mr. Rodgers, before I take your plea of guilty there are certain things I have to ask you with regard to determining whether you are competent to plea, whether you have assistance of counsel, whether you understand your right to be prosecuted by an indictment, and also your trial rights, and whether you understand the nature of the charges against you, and if your waiver of indictment and plea are voluntary, and that there is in fact a factual basis for your plea.

I'm going to ask you questions. You can consult with your attorney, Mr. McGuirk, if you so desire. Any false answers that you give to my questions, and you will be under oath, can be subject to prosecution for perjury or false statements.

In giving the answers to my questions you are waiving your right not to testify against yourself. Some of the answers to my questions will be incriminating, and you will have to admit your guilt. Do you understand what I have just told you?

DEFENDANT RODGERS: Yes, sir.

THE COURT: Will you please raise your right hand and the Clerk will administer the oath to the defendant.

(Defendant sworn.)

### EXAMINATION

BY THE COURT:

Q. What is your full name?

A. Carl Lowell Rodgers.

Q. How old are you?

A. 28 years.

Q. Please keep your voice up—where do you live?

A. 1432 West Rosemont, Chicago.

*Fountain,* 777 F.2d 351, 358–59 (7th Cir.1985).

---

**3.** Under the circumstances, we need not conduct an evidentiary hearing. *See United States v.*

■■■■■■

Q. Are you married?

A. Yes, sir.

Q. How far did you go in school?

A. I went to college, sir.

Q. How many years of college?

A. Up to master's degree.

Q. Pardon?

A. I went up to master's degree.

Q. You have a master's degree?

A. Yes, sir.

Q. From what college?

A. From London, sir.

Q. From London?

A. Yes, sir.

Q. What type of work have you done in the preceding three years?

A. I have done almost all kinds of jobs. I have worked in a factory, I have driven a cab, I have worked for a law firm and for the Company in Oak Brook.

Q. Are you in good health today?

A. Yes, sir.

Q. Have you had any drugs or alcoholic beverages within the last 24 hours?

A. No, sir.

Q. Have you been in the care of a doctor or a hospital for a mental condition, ever?

A. No, sir.

THE COURT: Mr. McGuirk, do you, or the Assistant, have any doubt as to the defendant's competent to waive a plea of guilty and to plead guilty at this time?

MR. McGUIRK: No, sir, your Honor, I do not. I have met with Mr. Rodgers a number of times. I met with him last night at the MCC. I have no doubt as to his competence to enter a plea.

MR. SINNOTT: I have no doubt, your Honor.

THE COURT: The Court finds the defendant is competent to waive the indictment and also to enter a plea of guilty.

Now, Mr. Rodgers, you are represented by an attorney who is with you today, is that correct?

BY THE DEFENDANT:

A. Yes, sir.

BY THE COURT:

Q. Have you had an adequate opportunity to discuss this matter with your attorney?

A. Yes, sir.

Q. And are you satisfied with the advice and efforts of your attorney, as far as advising you with regard to this matter?

A. Yes, sir.

Q. Have you received a copy of the criminal information?

A. No, sir.

THE COURT: Has he received a copy?

MR. McGUIRK: Your Honor, I received a copy and we read through it line-by-line last night, and also last week we went through most of the same information. Unfortunately, the MCC does not permit defense counsel to leave papers with defendants without going through a fairly long process. So while we read through it I did not leave it with him; I brought it with me.

THE COURT: Mr. Rodgers, have you gone through the copy of the information line-by-line with your attorney?

BY THE WITNESS:

A. Yes, sir.

BY THE COURT:

Q. Have you discussed it with your attorney?

A. Yes, sir.

Q. You understand that you are charged in the information with the commission of felonies. Do you understand that?

A. Yes, sir.

Q. Do you understand the nature of the charges against you—have they been explained to you by your attorney?

A. Yes, sir.

THE COURT: Mr. McGuirk, without going into the facts of the case, what explanation have you given to your client regarding the nature of the charges in this case?

MR. McGUIRK: Your Honor, the explanation I have given to Mr. Rodgers is that he is being charged in the first count of the information with mail fraud, a scheme to defraud by use of the mails, and that that

information charges that Mr. Rodgers opened various post office boxes, and through the use of credit card numbers and names not his own, ordered material from various vendors that were shipped through the mails in some cases, and in some cases through UPS. This was sent to these post office boxes, and then Mr. Rodgers picked up the merchandise, the different types of merchandise.

Count 2 is essentially that he used a credit card number not belonging to him, again to order merchandise in excess of $1,000 in value.

BY THE COURT:

Q. Mr. Rodgers, do you understand if you don't waive the indictment in this case you may not be charged with a felony unless the Grand Jury finds, by return of an indictment, that there was probable cause to believe that the crimes charged in the criminal information were committed, and that you committed the crimes? Do you understand that?

A. Yes, sir.

Q. Also, in order to obtain an indictment the government must present the charges to a Grand Jury before the matter may be brought to court. Do you understand that?

A. Yes, sir.

Q. Do you understand that a Grand Jury is composed of at least 16 and not more than 23 persons, and at least 12 grand jurors must find that there is probable cause to believe that the crime charged was committed by you before you can be indicted? Do you also understand that?

A. Yes, sir.

Q. Do you also understand that the Grand Jury might, or on the other hand might not, find probable cause in this matter? Do you understand that?

A. Yes, sir.

Q. If you waive indictment by the Grand Jury the case will proceed against you on the U.S. Attorney's criminal information as though you have been indicted. Do you understand that?

A. Yes, sir.

Q. You will be tried on the basis of an information rather than an indictment?

A. Yes, sir.

THE COURT: Is there a waiver of the indictment?

MR. McGUIRK: Your Honor, we have a waiver here in open court, and in the presence of the Court, as the defense counsel, I will sign and Mr. Rodgers will sign.

MR. SINNOTT: And in open court, your Honor, I am signing the waiver as a witness to the signatures of the defendant and counsel for the defendant.

At this time if the defendant could also sign the written plea agreement I can tender that fully signed copy to the Court as well.

MR. McGUIRK: Your Honor, Mr. Rodgers is signing the original. An exact duplicate copy of this plea agreement was reviewed with Mr. Rodgers yesterday at the MCC.

MR. SINNOTT: I am tendering to the Court the fully executed waiver and the fully executed plea agreement.

THE COURT: The Court acknowledges the executed waiver of indictment and also the executed plea agreement.

The record should note that the Assistant United States Attorney, Mr. McGuirk, the defense counsel, and also the defendant, have all signed both documents.

Do you understand by signing this waiver of indictment you have in fact waived the indictment and this is your signature that appears here, is that correct?

BY THE DEFENDANT:

A. Yes, sir.

BY THE COURT:

Q. Prior to today, did you discuss waiving an indictment with Mr. McGuirk?

A. Yes, sir.

Q. Have any threats or promises been made to you to induce you to waive indictment and be tried on an information?

A. No, sir.

THE COURT: Mr. McGuirk, do you know of any reason why your client should not waive the indictment in this case?

MR. McGUIRK: No, your Honor.

BY THE COURT:

Q. Is it your wish, Mr. Rodgers, to waive indictment by a Grand Jury?

A. Yes, sir.

THE COURT: Do you have an extra copy of the information?

MR. McGUIRK: Your Honor, I have a copy that I will tender to the Court.

BY THE COURT:

Q. Mr. Rodgers, in this case, 87 CR 549, have you had an opportunity to read the information in this case?

A. Yes, sir.

Q. Do you understand what you are charged with?

A. Yes, sir.

Q. Basically, you are charged with, in Count 1, a violation of Title 18 of the United States Code, Section 1341, which is the mail fraud statute. Did you and your attorney review this information in this particular count?

A. Yes, sir.

Q. In Count 2 you are charged with Title 18 of the United States Code, Section 1029, the unauthorized use of a credit card in interstate commerce. Did you also discuss this with your attorney?

A. Yes, sir.

Q. Have you read the entire information in this case or was it read to you?

A. I read it, sir.

Q. And you did discuss this information with Mr. McGuirk, is that correct?

A. Yes, sir.

THE COURT: Mr. McGuirk, basically what did you advise your client that he was charged with, in summation?

MR. McGUIRK: That he was charged with obtaining, through the use of the mails, goods and merchandise by false and fraudulent means, specifically credit card names and numbers, people not Mr. Rodgers. And that Mr. Rodgers knew that these individuals had not authorized him to obtain this property. The credit card charge simply involves the use of a credit card in interstate commerce, and the property, I believe, that was being charged was sent from Dodgeville, Wisconsin, from Land's End, as I recall, a mail order house, to a mail box that Mr. Rodgers controlled, and that he picked up the goods and property there.

BY THE COURT:

Q. Mr. Rodgers, do you understand these charges that are filed against you?

A. Yes, sir.

Q. Have you discussed with your attorney your intention to offer a plea of guilty to these charges?

A. I did, sir.

Q. Pardon?

A. Yes, I did.

Q. Now, do you understand that under the Constitution and the laws of the United States you are entitled to a trial by jury on the charges against you?

A. Yes, sir.

Q. Do you understand you have the right to plead not guilty?

A. Yes, sir.

Q. And if you plead not guilty you have a right to a speedy trial, to see and hear all of the witnesses called to testify against you, to use the subpoena power of the Court to obtain witnesses, the attendance of witnesses, and that Mr. McGuirk would have the right to cross-examine the witnesses; do you understand this?

A. Yes, sir.

Q. Do you understand that if this case were to go to trial you would be presumed to be innocent, and the government would be required to prove you guilty by competent evidence beyond a reasonable doubt before you could be found guilty, and that you would not have to prove that you are innocent; do you understand that?

A. Yes, I do.

Q. Do you understand at trial that you would also have the right to testify if choose to do so, and you would also have the right not to testify and no inference or suggestion of guilty could be drawn from the fact that you did not testify; do you understand that?

A. Yes, sir.

Q. Do you understand that the trial of this case could either be by jury or by non-jury?

A. Yes, sir.

Q. And if the trial were a jury trial the jury would be composed of 12 lay people selected at random; do you understand that?

A. Yes, sir.

Q. And that you and your attorney would have an opportunity to exclude jurors for cause if bias or disqualification was shown, or without cause by exercising so-called peremptory challenges; do you understand that?

A. Yes, sir.

Q. Do you understand that a jury would have to agree unanimously and would have to consider each count of the information separately, do you understand that?

A. Yes.

Q. Do you understand that at any trial a judge or jury would be guided by the rule which requires that the guilt be determined beyond a reasonable doubt; do you understand that?

A. Yes, sir.

Q. Do you understand that if at trial you were found guilty you would have a right to appeal?

A. Yes, sir.

Q. Do you understand that if you plead guilty you will waive these trial rights?

A. Yes.

Q. All of the rights I just mentioned, you waive them?

A. Yes.

Q. Do you understand that if you plead guilty and I accept your plea there will be no trial; I will enter a finding of guilty and sentence you on the basis of your plea after considering a pre-sentence investigation; do you understand that?

A. Yes, sir.

THE COURT: Now, there is a written plea agreement, is there not?

MR. McGUIRK: There is, your Honor. It has been signed here in open court by Mr. Rodgers. I have signed it and it has been tendered to the Court.

BY THE COURT:

Q. Have any other agreements or promises been made to you that are not in writing in this plea agreement?

A. No, sir.

Q. You did sign the plea agreement, is that correct—

A. Yes, sir.

Q.—today in open court—and did you have an opportunity to read the document before you signed it—do you know what is in there?

A. Yes, sir.

Q. Did you discuss the plea agreement with your attorney?

A. Yes, I did.

Q. Do you understand that the maximum possible penalty under Count 1—I think there is a typo in the plea agreement at the bottom of Page 2, I believe under 6(a), that refers to Count 2, and 6(b) refers to Count 1.

The penalty under 18 U.S.C. 1029 is Count 2. The mail fraud statute should be Count 1, five years in prison and a maximum fine of $1,000.

MR. SINNOTT: Yes, your Honor, that is correct. That is my error and I apologize to the Court.

BY THE COURT:

Q. So do you understand that the maximum possible penalty under Count 1, the mail fraud statute violation, is five years in prison, and a maximum fine of $1,000 for violation of 18 U.S.C. 1341; do you understand that?

A. Yes, sir.

Q. Do you also understand that under Count 2, the violation of 18 U.S.C. 1029, carries a maximum penalty of ten years in prison and a maximum fine of not more than the greater of $10,000 or twice the value obtained by the offense; do you understand that?

A. Yes, sir.

Q. Now the total potential sentence under both counts to which you will plead guilty is 15 years imprisonment and a fine of $1,000, plus an amount not more

than the greater of $10,000 or twice the value obtained by the offense, as well as any restitution that I may order; do you understand that?

A. Yes, sir.

Q. Do you also understand that in accordance with 18 U.S.C. 3013, upon the entry of a judgment of conviction you will be assessed $50 on each of the counts to which you have pled guilty in addition to any other penalty I might impose; do you understand that?

A. Yes, sir.

Q. Do you understand that under Paragraph 12 of the plea agreement nothing in this agreement shall limit the Internal Revenue Service in the collection of any taxes, interest or penalties from the defendant or the defendant's spouse, or any partnership or corporation that you might have; do you understand that?

A. Yes, sir.

Q. Under Paragraph 13, do you understand that the United States Attorney reserves the right to notify any state or federal agency of your conviction; do you understand that?

A. Yes, sir.

Q. And also at the time of sentencing the government shall recommend that you be incarcerated in a penal institution for a nonspecified period of incarceration; do you understand that?

A. Yes, sir.

Q. Do you also understand that the provisions of this particular paragraph of the plea agreement, No. 14 governing the sentencing recommendations, is only during the initial sentencing proceeding and does not apply or limit the government in the event that you subsequently move to reduce or modify your sentence; do you understand that?

A. Yes, sir.

Q. Has anyone forced you in any way to plead guilty?

A. No, sir.

Q. Has anyone threatened you in any way to cause you to plead guilty?

A. No, sir.

Q. Apart from the plea agreement that you have signed, have any promises been made to you to cause you to plead guilty?

A. No, sir.

Q. Is it your decision to plead guilty voluntarily today?

A. Yes, sir.

Q. Do you understand that the final decision as to what your sentence will be rests with me?

A. Yes, sir.

THE COURT: Will the government please summarize the evidence which will be adduced at trial with regard to both counts if this case were tried.

MR. SINNOTT: Yes, your Honor.

If this case were to go to trial the government's evidence would show that beginning in October of 1985 the defendant embarked on a scheme which involved the opening of post office boxes in Chicago. The first of which was opened in October of '85. The second one was opened at a later date.

Using those post office boxes the evidence would show that the defendant then obtained over 100 credit card numbers, including American Express and Visa credit cards, and used those credit card numbers to order merchandise in basically two ways. One by telephone to catalog companies. In those phone conversations the defendant would represent that he either was the person in whose name the credit card was issued, or had that person's authority to order merchandise. He would order the merchandise, have it directed to the post office boxes that he controlled.

The other method was through the mails, to send written orders to these various merchandise vendors and have them send their merchandise—again, under the pretense that Mr. Rodgers was the credit card holder or the agent of the credit card holder. He would order that merchandise to be sent to the post office boxes that he controlled.

During that period of time he obtained over $10,000 worth of merchandise from various vendors, including Land's End outlet and some computer companies. The

merchandise ranged from personal clothing to computer goods.

Among these 100 credit card holders was Mr. Michael Sapinsley, who had an American Express Credit Card No. 3728214934810005. Specifically, the testimony would show that the defendant, using that credit card number, ordered and received merchandise under the pretense that he was authorized by Mr. Michael Sapinsley to do so. That merchandise was received within a one-year period and aggregated more than $1,000 in value.

That, in summary, is what the government's evidence at trial would show.

BY THE COURT:

Q. Mr. Rodgers, you have been present and heard the statement of the Assistant United States Attorney. Is it correct?

A. Not all, sir.

Q. What is not correct, what part of the statement do you disagree with?

A. I never made any phone calls to order anything. We always filled out the order form.

Q. Is there anything else you wish to add to the statement?

A. Sir, I was working for somebody else—not entirely—somebody told me that he wants me to work for him, then if I received the goods he would pay me. When I order I keep the goods. He comes to pick them up and gives me some money. I never sold any of the goods or keep it for myself.

THE COURT: Mr. McGuirk, do you want to add anything?

MR. McGUIRK: I believe that the government also would establish that substantial quantities of material was recovered from Mr. Rodgers' home that had been ordered through the mail under different names.

MR. SINNOTT: Your Honor, if I could point out that the information does not charge any telephone calls. So the government would be willing to delete that from the statement of what the evidence would be at trial.

Further, that the plea agreement also provides for the defendant's cooperation in any ongoing investigation.

BY THE COURT:

Q. Are you satisfied, Mr. Rodgers, with the Assistant U.S. Attorney's statement if he deletes any reference to the telephone calls; other than that is the statement factually correct as to your involvement and the factual basis for your plea?

A. Yes, sir.

Q. Now, Mr. Rodgers, what is your plea to Count 1 of the information?

A. Guilty, sir.

Q. What is your plea to Count 2 of the information?

A. Guilty.

THE COURT: It is the finding of this Court in the case of the United States versus Carl L. Rodgers, Case No. 87 CR 549, that the defendant is fully competent and capable of entering an informed plea. The defendant's plea of guilty and waiver of indictment are a knowing and voluntary plea, and the waiver is supported by an independent basis of fact containing each essential element of the offenses.

The Court further finds that the defendant has had the assistance of counsel, has been fully informed of his rights at trial and has been fully advised of the maximum possible punishment.

The Court accepts the defendant's waiver of indictment and plea of guilty and enters a judgment of guilty on the plea as charged in Counts 1 and 2 of the information.

Now, Mr. Rodgers, I will order a pre-sentence investigation of your case. Your attorney will make arrangements with the Probation Department, as will the U.S. Attorney, for a preliminary interview in this case. Both attorneys and yourself will have an opportunity to review any pre-sentence investigation report prior to the date of my sentencing.

I am going to set this matter down for sentencing on October 16 at 2:00 p.m. Now there is also an order of detention in this case, correct?

MR. SINNOTT: Yes, your Honor.

THE COURT: There was a hearing, a detention hearing, as I understand it, in front of the magistrate, is that correct?

MR. SINNOTT: Yes, there was.

MR. McGUIRK: There was a detention hearing, I believe, on two separate days.

THE COURT: The magistrate, as I understand it, is also unavailable today, is that correct?

MR. SINNOTT: He is on vacation for a two-week period.

THE COURT: Is there anything new that has transpired since the two different hearing dates which would have any effect on signing an order of detention?

MR. McGUIRK: Your Honor, I believe the detention order does provide that the marshals, or the Metropolitan Correctional Center, will see that the defendant is brought to court in connection with any proceedings. I believe that there is also a state matter which I understand is scheduled for September 4. My understanding is that arrangements have been made. So I believe that simply confirms the intention of Magistrate Weisberg that the defendant remain in federal custody and be brought over to 26th and California for any state proceedings.

THE COURT: I assume that the original detention order was based on the fact of a possibility of flight, is that correct?

MR. SINNOTT: Yes, your Honor.

THE COURT: And basically that the defendant has no substantial ties to the community, has used an alias, is not gainfully employed, owns no property of value and has a non-certain immigration status. There was a conclusion that the motivation to flee would be strong and the ties to the community are minimal, is that correct?

MR. SINNOTT: Yes, your Honor.

THE COURT: Has anything changed since the detention order hearing, Mr. McGuirk, that would be contrary to what I have just read?

MR. McGUIRK: The most important aspect, your Honor, is that were Mr. Rodgers to be released from federal custody he would go into state custody at 26th and California.

THE COURT: I also note here that the defendant, through you, Mr. McGuirk, has stated that he has no objection to being detained in federal custody because he would, if released from federal custody, be likely to be retained by state authorities on an auto theft charge, is that correct?

MR. McGUIRK: That is correct.

BY THE COURT:

Q. Is that correct, Mr. Rodgers, that you have no objection to being detained in federal custody because of the pending state court charge?

A. Yes, sir.

Q. In other words, you would rather be in federal custody, is that correct?

A. Yes, sir.

THE COURT: All right, I will sign the order of detention and I will make a specific finding that based upon the two hearings that went on before the magistrate that there is a significant potential for flight here and that the motivation of the defendant to flee is strong, and his ties to the community are minimal as previously set forth.

Anything else?

MR. SINNOTT: Nothing further, your Honor.

THE COURT: I will see you on October 16 at 2:00 p.m.

MR. McGUIRK: Thank you, your Honor.

MR. SINNOTT: Thank you.

(Which were all the proceedings had herein this day and date.)